NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—MARCH, 1877.

## FURNISS *v.* FURNISS.

*In the matter of the Estate of* W. P. FURNISS, *deceased.*

The authority of the Surrogate's Court over testamentary trustees is purely statutory.*

It has no power upon petition of a beneficiary, to compel trustees to complete an alleged purchase by them of the trust property.

If such a purchase were proved upon a final accounting of the trustees, the Surrogate's Court could compel the trustees to account for the price; but any remedy in the nature of a bill in equity to compel them to respond as if purchased, on the ground of their neglect, must be by action.

THIS was an application in the matter of, the estate of W. P. Furniss, deceased, to compel the executors to place to the account of the petitioner, as an investment the amount for which certain real estate was sold to one Rogers, book-keeper for the executor.

The petitioner, Leon Furniss, was a devisee and legatee, and by a decree of this court, the executors and trustees were to account to the petitioner for the amount and the nature of the investments held in trust for him, the rents and profits of which he was to receive.

The petition alleged that they sold by public auction, eight lots of ground located in this city, four of which were stated to have been purchased by said Rogers for the benefit of petitioner, the petitioner alleging that such purchases were without authority, and contrary to the duty of the trustees.

It appeared that three of the lots sold for $23,500, and five of them for $28,550. Thirty per cent. was

paid down, and the trustees took mortgages for the balance, the first of $16,450, and the next for $19,985; the mortgages were foreclosed for non-payment of interest. The first sold for $8,500, and the other for $10,000, to the trustees, who were the only bidders. In September, 1876, the petitioner requested the trustees to sell the lots; they were advertised, and the petitioner was called upon for instructions, but he declined to commit himself, but stated they ought to bring $24,000; that four of the lots sold for $13,025; the remaining lots, to make $24,000, should have sold for $3,000 each—the best price offered for two of them was $2,100, and for the other two, $1,800 each, and for that reason the trustees declined to sell them, but had them bid in for the benefit of the petitioner.

It appeared that the executors were empowered by the will to sell the real estate, at their discretion; that the income of that portion of the estate held by the trustees for petitioner was to be paid to him, the principal sum to go to his brothers and sisters, as he should appoint by will, but if he failed to appoint, then to them in equal shares, but in case judgment should be recovered against him, his interest was to cease, except that the trustees paid his necessary support, and the surplus to go to his sisters. The powers conferred upon the executors were discretionary, and the majority of them could exercise the discretion.

RUFUS F. ANDREWS, *for the petitioner.*
LORD JAY, & LORD, *for the executor.*

THE SURROGATE.—The authority of the Surrogate over testamentary trustees is purely statutory, the Supreme Court having general jurisdiction and authority over them, and I am not aware of any statute which confers authority upon this court to grant the relief sought in this proceeding.

By the Laws of 1850, (chapter 272, amended by chapter 115 of the Laws of 1866,) testamentary trustees were authorized to render and finally settle their accounts before the Surrogate.

By chapter 782, of the Laws of 1869, section 1, the Surrogate is empowered to compel such trustees to account in the same manner as executors, etc., and by chap. 482, of the Laws of 1871, the latter act was amended, so as to enable the Surrogate to require security from such trustees, in the same manner as he could require it of executors, etc., and by chapter 359, of the Laws of 1870, the Surrogate of this county is authorized on the application of an executor, trustee, etc., named in any will proved in his court, to revoke such letters, discharge such trustees, and appoint others.

These are believed to be all the acts relating to the authority of the Surrogate over the conduct of testamentary trustees. I am of the opinion that none of these embraced the power sought to be exercised in this proceeding, for it is not a proceeding for the purpose of procuring an accounting or security, or for removing or substituting a trustee, but is in the nature of a bill in equity to compel the executors, or trustees, to complete an alleged purchase and sale of the premises in question, on the allegation that they have neglected their duties in that particular.

If the question should arise upon final accounting of the trustees before this court and it should be adjudged that the sale was regularly made, and that they should have collected the purchased price, then undoubtedly, on such account, they should be charged with the amount, but as it is clear that the sale was not in fact made, but the bid by Rogers was made for the purpose of preventing a sacrifice of the property, and as the will conferred the largest discretion upon the trustees as to a sale, it

seems to me, it would be an unwarrantable invasion of their prerogatives, to attempt to control their discretion.

The examination of this case has led me to the con clusion that there is a defect in the law in respect to the the authority of this court, over testamentary trustees, and it seems to me that it would be reasonable as well as beneficial to confer upon the Surrogate full authority over testamentary trustees in respect to any property of a deceased person entrusted to them, but until such authority shall be conferred, it is my obvious duty to withhold its exercise.

It may be urged that 2 *Rev. Stat.* 220, section 1 is sufficiently broad to cover this case, and if they were acting in the capacity of executors such would undoubtedly be true, for the third subdivision gives the Surrogate full power to control the conduct of executors and administrators, and subdivision six provides, that the Surrogate shall have authority to administer justice in all matters relating to the affairs of deceased persons according to the provisions of the statutes of this State, but the limitation, according to the provisions of the statutes of this State is evidently designed to restrict the authority of the Surrogate in his control of those officers, over whom he has special jurisdiction by statute. If a larger interpretation could be given to this sixth subdivision it would confer authority upon the Surrogate to control the conduct of a trustee appointed by the Supreme Court, or a receiver of the assets of a deceased person, which evidently was never designed.

Petition dismissed.